IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGINA WEST, et al., ) | |
| ) | No. 22 C 999 |
| Plaintiffs, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| ALEXIS BURNS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendant for negligence. The case is before the Court on defendant's motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment against Plaintiff Regina West. For the reasons set forth below, the Court denies the motion.

**Facts**[1]

On March 5, 2021, plaintiff ("West") was a passenger in a vehicle driven by co-Plaintiff Jina Hamilton. (ECF 25 ¶ 1). West and Hamilton were involved in a motor vehicle accident with a vehicle being operated by defendant Alexis Burns.[2] (*Id*.). The accident occurred in Will County, Illinois. (*Id*.) West suffered personal injury as a result of the motor vehicle accident. (*Id*. ¶ 4).

On March 15, 2021, a Progressive Insurance claims representative, Danny Bandera ("Bandera"), contacted West to discuss the accident. (*Id*. ¶ 5). Later that day, Bandera emailed

---

[1] These facts are undisputed unless noted otherwise.
[2] Progressive Northern Insurance Company was Burns' automobile insurer at the time of the underlying automobile accident. The insurance company, acting on behalf of Burns, has played a large role in the events giving rise to defendant's summary judgment motion. Accordingly, the Court will sometimes refer to defendant as "Progressive" for simplicity purposes.

West, describing terms of a purported settlement agreement regarding any injury claim West had against Burns. (*Id*. ¶ 6). Among other things, the email stated: "As we discussed today (03/15/2021), you have agreed to settle the injury claim for $860.00." (ECF 25-1 at pp. 8-9). Further, Bandera's email noted that if West had chosen to receive a digital payment, "[West] will receive a separate email with instructions on how to accept the digital payment." (*Id*. at 8). Bandera's email also stated that: "Accepting a digital payment or draft shall serve as full and final settlement of your bodily injury claim." (*Id*. at p. 9). The email included an attachment, which was titled "FULL RELEASE OF ALL CLAIMS WITH INDEMNITY (Medical Bills Incurred and Open Medical Agreement)." (ECF 25 ¶ 10, ECF 25-1 at p. 9-10). Bandera's email directed West to sign and return the attached release to him. (*Id*.) West never signed the Release. (ECF 25 ¶ 10). Still, that same day, Progressive issued an Electronic Funds Transfer payment to West in the amount of $860.00, and the funds were immediately deposited into West's bank account. (*Id*. ¶ 11). West has retained the $860 since that time.[3] (*Id*. ¶ 14). Approximately three days after receiving the funds, West called Progressive to complain about the purported settlement agreement. (ECF 28-1 at pp. 37-38).

On February 25, 2022, West filed the instant lawsuit, which seeks monetary damages for personal injuries she sustained in the March 5, 2021, motor vehicle accident with Burns. (ECF 25 ¶ 16).

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] As discussed, *infra*, West alleges that she inquired with her bank and/or Progressive as to returning the funds. However, to this point, she still has the money.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Illinois,[4] settlement agreements are enforced like any other contract. *See In re Illinois Bell Tele. Link-Up II*, 994 N.E.2d 553, 558, 373 Ill. Dec. 784 (1st Dist. 2013) (settlement "agreements are construed and enforced under principles of contract law"). "Like any other contract, the essential terms of the settlement agreement must be definite and certain for it to be enforceable." *City of Chicago v. Ramirez*, 366 Ill.App.3d 935, 946, 852 N.E.2d 312, 324, 304 Ill.Dec. 62, 74 (1st Dist. 2006). A settlement agreement is binding only if there is an offer, an acceptance, and a meeting of the minds as to the terms of the settlement. *Sementa v. Tylman*, 230 Ill.App.3d 701, 705, 172 Ill.Dec. 327, 595 N.E.2d 688 (1992). A meeting of the minds occurs between the parties when there has been "assent to the same things in the same sense on all essential terms and conditions[.]" *See Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 839, 823 N.E.2d 597, 604 (2005) (citing *La Salle National Bank v. International Ltd.*, 129 Ill.App.2d 381, 394, 263 N.E.2d 506, 513 (1970)).

---

[4] The parties agree that Illinois law applies to this diversity action.

The most common way by which mutual assent can be shown is through a signature on a contract. *Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 206, 315 Ill.Dec. 1, 876 N.E.2d 1 (2007). A party who has signed a contract is charged with knowledge of and assent to its terms. *Melena v. Anaheuser-Busch, Inc.*, 219 Ill. 2d at 150, 301 Ill.Dec. 440, 847 N.E.2d 99 (2006). However, it is also well settled that a party may, by acts and conduct, indicate assent to the terms of a written contract and become bound by its provisions, even though the party has not signed it. *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 383, 122 Ill.Dec. 344, 526 N.E.2d 603 (1988). For a course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question. *Id*. When a "meeting of the minds" question arises, Illinois follows the objective theory of intent. *See Village of South Elgin v. Waste Mgt. of Ill., Inc.*, 348 Ill.App.3d 929, 284 Ill.Dec. 868, 810 N.E.2d 658, 670 (2004). "Under the objective theory, intent to manifest assent in Illinois is revealed by outward expressions such as words and acts." *Sgouros v. TransUnion*, 817 F.3d 1029, 1034 (7th Cir. 2016).

Progressive moves for summary judgment on the basis that West previously agreed to a full and final settlement agreement for her injury claim against Burns. Thus, Progressive asserts West is precluded from bringing the instant action. Specifically, Progressive argues that Bandera's March 15, 2021, email to West constituted an offer to settle West's injury claim against Burns for $860,[5] and that West accepted that offer upon receiving and depositing $860 from Progressive into her personal bank account. It is undisputed that West never signed the release that was attached to Bandera's email nor responded in writing to Bandera's email.

---

[5] The payment of certain medical bills was also a component of the purported settlement agreement, but the payment of those bills is not pertinent to the instant motion.

Nonetheless, Progressive argues there was a "meeting of the minds" (and a resulting binding agreement) based upon the following: West's affirmative act of accepting the $860 deposit; the explicit description of the agreement in the email sent by Bandera to West; and the description of the agreement provided in written detail on the "draft" itself. Also, Progressive argues that the simplicity of the agreement (i.e., dismissal of the claim in exchange for a monetary sum) further evinces a meeting of the minds.

West argues that there was never a meeting of the minds as to Progressive's offer (emailed by Bandera) and that she is not bound by any prior purported agreement with defendant. West claims that based on her March 15, 2021, phone conversation with Bandera, she understood the $860 payment offer to be in relation to lost wages West incurred following the accident. Thus, according to West, Bandera's subsequent email and attached release were inconsistent with the prior phone conversation. Additionally, West called Progressive approximately three days after Bandera's email was sent and indicated that she did *not* agree to settle her injury claim against Burns. While West admits that she received an $860 payment from Progressive and has never returned it, she disagrees that she completed any affirmative act(s) to obtain the funds. Rather, West asserts that the $860 was transferred to her account without her affirmative assent. West also claims that following receipt of the funds, she reached out to her bank for guidance on how to reverse the transaction, and/or offered to return the funds to Progressive.

The Court finds that there are disputed material facts that prevent a summary judgment ruling in favor of defendant. Moreover, the underlying evidentiary record is underdeveloped as to certain material facts, which also precludes a summary judgment ruling. Based on this record,

we cannot say as a matter of law that there was a meeting of the minds between West and Progressive with respect to Bandera's emailed offer.

As an initial matter, West never signed the attached release or otherwise manifested written approval to Progressive. Thus, we must look to West's objective conduct, such as words and acts, to determine if a meeting of the minds occurred. *Sgouros v. TransUnion*, 817 F.3d 1029, 1034 (7th Cir. 2016) (applying Illinois law). Progressive asserts that West completed affirmative acts to obtain the $860 payment, and these acts are sufficient to establish a meeting of the minds, particularly since Bandera's email notified West that accepting the payment constituted acceptance of the full and final settlement agreement. However, the circumstances surrounding West's receipt of the funds—and her subsequent efforts to return the funds—are either disputed facts or unclear from this record.

Importantly, West's version of the events could lead a reasonable jury to find that there was never a meeting of the minds as to Bandera's emailed offer. Indeed, West claims that she completed no affirmative acts to obtain the $860 payment. Rather, she claims the funds were automatically transferred to her account. If true, there would seemingly be no signed agreement *nor* any objective words or affirmative actions from West that indicate West's assent to Bandera's emailed offer. Thus, a reasonable jury could find that there was no meeting of the minds.

Progressive posits that West *must* have taken affirmative acts to obtain the $860 payment and submits an affidavit from Bandera in support of this proposition. Specifically, Bandera's affidavit describes how Progressive's digital claim payment process purportedly works. According to Bandera, Progressive starts the process by sending an email to a claimant describing the terms of a settlement agreement. Separately, Progressive's bank (Commerce

Bank) sends an email to the claimant with instructions on how to obtain the funds pursuant to the relevant settlement agreement. The email from Commerce Bank (a third party who is not involved in this litigation) apparently contains a link, which claimants must click on and then enter certain information, such as the claim number and date of loss. Claimants must then select their preferred payment method. According to Progressive, the Court can infer that West received the email from Commerce Bank and completed these affirmative acts (i.e., West clicked on the link in the email, entered her claim information, and selected a digital payment method) because it is undisputed that West received the $860 payment on the same day that Bandera emailed her.

There are several problems with Bandera's affidavit. First, Bandera claims to have personal knowledge about the content of emails purportedly sent by Commerce Bank to claimants (including West), yet it is unclear how Bandera gathered this specific knowledge. "At summary judgment, … saying so doesn't make it so[.]" *United States v. 5443 Suffield Terrace, Skokie*, 607 F.3d 504, 510 (7th Cir. 2010); s*ee also McLaren v. College*, 194 F. Supp. 3d 743, 751-752 (N.D. Ill. Jul. 11, 2016) (finding plaintiff's affidavit to be insufficient at the summary judgment stage when the plaintiff's personal knowledge was not based on admissible evidence in the summary judgment record). Indeed, Bandera describes the content of emails he does not send nor, apparently, has first-hand access to. Progressive asserts that it could not produce the purported email West received from Commerce Bank because Progressive was not a party to that email. Yet, Progressive still relies on the content of that purported email to argue that West *must* have taken affirmative steps to accept the $860 payment. This factual ambiguity alone informs our summary judgment analysis. Coupling the factual ambiguity with Progressive's reliance on

inadmissible evidence to support its motion for summary judgment[6] confirms that summary judgment is not appropriate.

The Court appreciates that Progressive does not have access to all emails sent by their bank, but it is unclear why, for purposes of this litigation, Progressive could not have requested a copy of the email at issue from their banking partner. It appears to be a vital piece of evidence toward establishing their claim that West manifested assent to Bandera's email by engaging in affirmative acts. Yet, for some reason, Progressive chose not to include this email in the record and instead submitted Bandera's affidavit (an individual who seemingly has never seen the specific email in question). The omission of the email from the record is even more perplexing considering that Progressive had express notice of West's position that she took no affirmative acts to obtain the funds, based on West's response to the summary judgment motion.[7] Simply put, specific factual evidence as to the claim payment process is germane to this motion for summary judgment, and on this record it remains in significant dispute, largely due to the improperly developed record. *See Ambre v. Joe Madden Ford*, 881 F. Supp. 1187, 1192 (N.D. Ill. Apr. 4, 1995) ("Without a properly developed record, [Defendant's] motion for summary judgment … is denied").

---

[6] As noted *supra*, Bandera's affidavit as to key portions of the payment issuance process lacks proper foundation intertwined with hearsay issues. Bandera's affidavit essentially serves as a Rule 30(b)(6) statement of Progressive's bank's (Commerce Bank) banking practices packaged as (we suppose) "habit and custom." FED. R. EVID. 406. Progressive does not present any legal argument as to why Bandera's affidavit detailing Commerce Bank's process is admissible evidence. While Bandera does explain that he is familiar with this process based on his prior professional duties with Progressive, he *does not attest* that he *knows* this process played out in West's circumstance and how he knows those facts. Moreover, even if admissible evidence were presented on this point, West claims that Progressive's settlement funds were not deposited into her account in this manner, suggesting a material factual dispute would still exist.

[7] The Court also notes that defendant failed to conduct West's deposition during the discovery period provided by this Court. *See* ECF 33. A deposition would have been another opportunity to develop a record of West's assertions regarding the payment process, and then attack those assertions through relevant evidence, such as the alleged email from Commerce Bank.

We also note that even if Bandera's affidavit was based on personal knowledge and accurately set out the claim payment process in general terms, the affidavit still lacks the requisite specificity that would allow the Court to render summary judgment in favor of defendant. For example, Bandera's affidavit is silent on precisely *when* West would have received the email from Commerce Bank. This is a simple yet pivotal factor in our view, because if the bank's email was sent contemporaneously with Bandera's email (or if it was sent only a short time after Bandera's email was delivered), one could reasonably imagine a situation where West reviewed the bank's email *prior* to Bandera's email, accepted the payment with the understanding she developed from her phone call with Bandera (i.e., that the payment related only to lost wages), and only then reviewed Bandera's email and noticed the substantially different terms. If the events played out in that manner, it would be seemingly improper for the Court to rule there was ever a meeting of the minds.[8] See *Landmark Properties, Inc. v. Architects Int'l-Chicago*, 172 Ill. App. 3d 379, 383, 526 N.E.2d 603, 606 (1988) ("For course of conduct to act as consent to a contract, it must be clear that the conduct relates to the *specific* contract in question.) (citing *Lynge v. Kunstmann* (1981), 94 Ill.App.3d 689, 694, 50 Ill.Dec. 146, 418 N.E.2d 1140.) (emphasis added).

Relatedly, there is also no indication that Commerce Bank's email expressly notified West that accepting the funds constituted acceptance of a full and final settlement agreement with Progressive. While Progressive argues that the "draft" tendered to West included a description which stated: "Full and Final Settlement of all Bodily Injury Claims with Open Meds," it is unclear what exactly the "draft" [9] referenced by Progressive is in the first place.

---

[8] While West does not assert that the events played out in this order (West does not mention an email from Commerce Bank whatsoever), the Court notes this hypothetical to further demonstrate the lack of clarity and disputed nature of the circumstances surrounding West's receipt of Progressive's claim payment.
[9] ECF 25-1 at p. 12 (Exhibit E).

West asserts that this document is some sort of written receipt for the electronic transfer or payment and that it does nothing to establish a binding agreement. Thus, the issue of whether West received notice as to the consequences of accepting the funds is another material dispute that precludes summary judgment.[10] *See Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983-84, 296 Ill.Dec. 258, 835 N.E.2d 113 (2005) ("The circumstances of the transaction must provide the offeree with reasonable notice that the terms of a contract are being offered and that certain acts or conduct by the offeree will constitute acceptance of the offer."). In short, the record fails to establish both whether and when West may have realized that her acceptance of Progressive's payment constituted acceptance of a full and final settlement agreement with Progressive.

Finally, defendant's reliance on *Cotton v. Adams*, 2017 WL 972016 (N.D. Ill. Mar. 14, 2017), is unavailing. There, an unsigned settlement agreement was found to be enforceable. The agreement at issue was reached when the defendants' attorney tendered a settlement offer to the plaintiff's attorney, and, a few days later, plaintiff's attorney informed defense counsel that he had spoken with plaintiff and that plaintiff accepted defendants' offer. *Id*. at *2. That same day, plaintiff's counsel informed the presiding Magistrate Judge that a settlement agreement was reached in principle. *Id*. However, plaintiff's counsel lost touch with plaintiff, and after the written settlement agreement remained unsigned, defendants brought a motion to enforce the settlement agreement. *Id*. At a motion hearing, plaintiff's mother (a third party) appeared and objected to the agreement. *Id*. Among other arguments, plaintiff's mother asserted that the agreement was unenforceable because it had not been signed. *Id*. at *3. The court disagreed, holding that an enforceable settlement agreement had been reached. *Id*. Relevant here, the court

---

[10] The Court has already observed that the record is unclear as to whether West reviewed Bandera's email (which *does* provide express notice as to the consequences of accepting the $860) before reviewing the purported email from Commerce Bank.

noted that the only objector was a third party and that there was no evidence supporting a claim that the *plaintiff* disagreed to the terms of the settlement agreement. *Id*. Additionally, the simple nature of the agreement (drop lawsuit for monetary payment) "underscored the obviousness of its material terms—the Plaintiff will dismiss the lawsuit in exchange for $30,000[,]" and supported a meeting of the minds as to the underlying agreement. *Id*.

There are several distinctions between *Cotton* and the instant case. As an initial matter, in *Cotton*, the underlying settlement agreement involved two parties who were represented by attorneys, whereas here, West was unrepresented at the time a purported settlement was reached. *C.f. Darvosh v. Lewis*, No. 13 C 04727, 2015 WL 5445411, at *6 (N.D. Ill. Sept. 11, 2015) ("Further, because Plaintiff was represented by counsel when he signed both Agreements, his lack of understanding does not invalidate the settlement. When a party is represented by counsel, it is counsel's responsibility to represent the party's interest."). Thus, it is reasonable to infer that the court in *Cotton* may have reached a different result if the plaintiff had been unrepresented while negotiating the underlying settlement agreement. Second, in *Cotton*, there were multiple traceable communications that demonstrated that an agreement was reached despite the absence of a signed written agreement. Specifically, the evidence showed that plaintiff's attorney reviewed a settlement offer from defendants, obtained his client's approval to accept the offer, and conveyed that acceptance to defense counsel *and* the presiding Magistrate Judge. In contrast, here, the only admissible documentary evidence showing a purported agreement is Bandera's initial email to West, which referenced an agreement they reached over the phone. However, the circumstances surrounding that phone call and West's understanding of any agreement reached are unclear from this record. Additionally, in *Cotton*, it was merely a third party who objected to the settlement agreement for reasons that were seemingly her own. In this case, West—a party to

the underlying purported agreement—objects to the substance of the proposed agreement for a relatively clear reason (i.e., a misunderstanding as to substance of the agreement). Further, as discussed at length, West objects that she ever assented to the underlying written agreement in the first instance, which was not the case in *Cotton*. Finally, the simplicity of the agreement at issue in *Cotton* is only relevant here because both underlying agreements relate to a payment in exchange for dropping a legal claim. However, in this case, there is an asserted misunderstanding as to what the settlement payment was in relation to (an injury settlement *or* compensation for lost wages), which was not the case in *Cotton*. For all of these reasons, *Cotton* does not support a finding that West is bound to the written terms proposed in Bandera's email.

## Conclusion

In closing, the Court's resolution of this issue should not be understood to undermine the modern developments of claim resolution by the insurance industry through the use of emailed releases and acceptance of electronically transferred funds. Rather, the result here is driven by well-developed principles regarding summary judgment practice. Simply put, the factual record was not fully developed on key facts that were in dispute.

For the above reasons, the Court denies defendant's motion for summary judgment [24]. A status hearing is scheduled for July 12, 2023, at 9:15 a.m., to discuss pre-trial proceedings.

**SO ORDERED.**    **ENTERED:**

**Dated: June 29, 2023**

*M. David Weisman*
**M. David Weisman**
**United States Magistrate Judge**